## L. C. AKENS v. THE STATE.

No. 22242. Delivered January 6, 1943.
Rehearing Denied January 27, 1943.

The opinion states the case.

*Jules F. Mayer*, of Dallas, for appellant.

*Forrester Hancock*, Criminal District Attorney, and *F. L. Wilson*, Assistant Criminal District Attorney, both of Waxa-

hachie, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the murder with malice of V. L. Morris, and upon a conviction he was awarded a penalty of confinement in the State prison for his lifetime.

The facts are reasonably clear and show from the State's standpoint that in the early part of the night of September 15, 1941, Mr. and Mrs. Morris as well as several others were at the intersection of two streets in the City of Dallas, Texas, waiting to board a street car. Appellant, a negro, in company with some other negroes, was also waiting to board such car. Upon the approach of such car Mrs. Morris started to board the car, and appellant brushed in front of her, pushing her aside by striking her on the left breast with his body. At such time the deceased, a policeman of the City of Dallas, took hold of appellant and said "Come back here, boy," at which time appellant developed a knife with a blade three or four inches long, and lunged at the deceased with the knife. A scuffle ensued, and the policeman pulled his pistol and said "Drop that knife." The officer struck the negro over the head with the pistol, and a shot was fired therefrom. The scuffling continued, the officer backing towards the street curb, and appellant "lunging" at him with the knife; a second shot was fired, and appellant then had the gun; the deceased then started running towards the street car, and the appellant raised the gun and shot the deceased in the back, and deceased fell with his body inside the street car and his feet on the steps. Appellant then fled, and was caught by a soldier who witnessed the transaction, but appellant relieved himself of the hold of the soldier, cursed him and threatened to kill him. He afterwards went to the city hall and surrendered, and gave up the officer's gun.

Appellant was indicted by a grand jury of Dallas County for murder, the grand jury having been organized at the July term, 1941, of a district court of that county. He made a motion to quash the indictment thus found by this grand jury, upon the ground that such indictment was illegal and void and of no force and effect because of the fact that the negro as a race had been discriminated against in that no negro was on such grand jury. We find in the record a statement of facts heard upon such motion, consisting of the testimony of thirty wit-

nesses, 61 pages, in which it is sought to be shown that (1) no negro had ever been drawn and served on a grand jury of Dallas County, and (2) that there were negro residents in Dallas County possessing the necessary qualifications under the statute for grand jury service.

Appellant also moved to quash the different jury panels after the first panel had been disposed of on the ground that he was entitled to have presented to him continuously the first venire in this cause until all veniremen had been utilized or disposed of before he could again be arraigned before a further venire.

This case had rather a checkered career. Upon its first call a venire of 300 men were presented from whom a jury was to be selected. By nighttime of the first day for jury selection four jurors were selected. It appears that one of the thus selected jurors became convinced that his mind was fully made up, although no evidence had been heard, and it could not be changed, whereupon he was insistent in making such fact known to the court. The court then discharged such four jurors, and also the whole panel, and reset the case for a later date. Upon the appearance of a second venire at the later date, the whole venire was quashed upon motion of appellant for some undisclosed irregularity in the summoning thereof.

Upon a further setting of the case, a jury of twelve men was selected, and a near relative of one of the jurors suddenly died, and upon agreement of all parties, including appellant, the jury was dismissed. Whereupon the trial court upon his own motion changed the venue of this cause to Ellis County, where final trial was had.

Appellant objected to each and every jury venire after the first one, and demanded that the remainder of the first venire, unexhausted at the time of the discharge of the four jurors, be presented to him at each trial, offering the Sharpe Case, 17 Tex. App. 487, as authority for such a position. The Sharpe Case does not lay down such a doctrine. Appellant's attorney also cites us to Hall v. State, locating the same in 12 Texas, 739. We find no such case in that volume, nor in the 12 Court of Appeals . We do find same located in 12 S. W. 739.

Appellant's proposition is not supported by reason. If such were true, no postponed trial, no continued trial, no hung

jury trial, no new trial, no case reversed upon appeal, could ever be tried except before the unexhausted portion, if such there be, of the first jury venire.

The main question presented herein is practically the same as was offered in the case of Hill v. State, 157 S. W. (2d) 369, which was reversed by the Supreme Court of the United States, the opinion to be found in 86 L. Ed., p. 1559, Advance Sheets. That court held that similar testimony evidenced a deliberate discrimination in the selection of grand jurors for many years upon the part of the judges of the district courts of Dallas County, and their jury commissioners for many years, and disregarding the testimony of such judges and commissioners such court reversed the cause, and virtually held the indictment therein to be void. In the face of the oft-repeated statements of these commissioners, good men, supposedly, and of high character, presumptively, the court held that they deliberately and purposely excluded negroes from the grand jury panel, solely on account of their color. It is there stated that the State did not attempt to refute such a proposition, by the inference that the State submitted no affidavits and called no witnesses. It was shown, as in this case, that the commissioners stated that they knew no person of the colored race whom they thought would make a good grand juror, and therefore selected none of such race. Could it be expected or intended that they would go out and hunt such a colored person, unknown to each of them, and place such person on the grand jury panel? and if so, how many such persons should they search for and find? Then, too, would it not be necessary to seek for a person of Mexican descent, many of whom are resident in Texas. Some persons of the yellow race, or of alien extraction, should also be found to make up this modern mixture of races, so that all prospective evildoers should find their own proper place represented in color or kind upon this polyglot mixture of investigators of the deeds of the evilly inclined.

There are offered herein in the filed statement of facts developed upon the trial of the motion to quash persons of the colored race who evidenced a consent to serve on a grand jury; some doctors who are exempt from such service; some dentists; some school teachers, also exempt, and a professional bondsman, Charlie Brackins by name, possibly one who might be subject to be excused by the judge impaneling the jury on account of his interest in the persons bonded by him to answer

to the action of a grand jury. As has been heretofore pointed out, no sole qualification exists such as a householder or free-holder; there are many other demanded qualifications, chief among them being that of a good moral character, and such is not proven alone by the statement of the person under investigation, nor possibly by his friends or acquaintances. It is established by what he has evidenced as to what he actually is. When these jury commissioners said they knew of no negro whom they thought would make a grand juror, we think the State had refuted any statement relative to the prejudice and discrimination against the negro on account of his color. There were no previous jury commissioners brought forward in the trial of this motion, and the statement of any person who may have held a position of trust back in the past years has not sufficient force to bring us to doubt the affirmative statement by the commissioners who selected this present grand jury, which was selected some months prior to the time appellant had the intent to commit the offense herein charged. We again affirm our belief that the mistake of negligence of jury commissioners in the past has not sufficient force to overcome the positive statement of these present commissioners. Regardless of what our views may be, the Supreme Court of the Nation has said that the continued failure to find men of color whose characteristics are sufficiently strong to convince one that they are of grand jury calibre is an irrefutable evidence of discrimination against them because of their color alone. See the Hill case, supra. As in duty bound, we find ourselves in the position of ordering a reversal of this cause on account of what that court says is deliberate discrimination against appellant because of the color of his skin.

This judgment is therefore reversed and the cause ordered dismissed.

### ON MOTION FOR REHEARING.

DAVIDSON, Judge.

The State, through the Criminal District Attorney of Ellis County, has filed a motion for rehearing, in which it is insisted that the question of race discrimination was not properly raised in the trial court in that no motion to quash the indictment was presented, verified by the oath of the appellant, as required of special pleas, under the provisions of Art. 509, C. C. P.-

The record before us reflects that appellant's original motion, as well as all subsequent motions, presenting the question of race discrimination, was sworn to by him before the District Clerk of Dallas County, Texas.

The State's contention does not find support in the record. The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.